Belknap
No. 95-877

THE STATE OF NEW HAMPSHIRE

v.

DONNA SUMMERS

November 19, 1997

*Steven M. Houran*, acting attorney general (*John C. Kissinger*, assistant attorney general, on the brief, and *Ann M. Rice*, assistant attorney general, orally), for the State.

*Seufert Professional Association*, of Franklin (*Christopher J. Seufert* on the brief, and *William J. Schultz* orally), for the defendant.

JOHNSON, J. Following a jury trial in Superior Court (*Smukler*, J.), the defendant, Donna Summers, was convicted of two counts of "doctor shopping," *i.e.*, obtaining controlled drugs by fraud or misrepresentation. *See* RSA 318-B:2, XII-a (1995). The defendant appeals, arguing that the trial court erroneously denied her motion to suppress evidence obtained from her medical records, consolidated the two criminal complaints for trial, and allowed the State to amend the two complaints immediately prior to trial. We affirm.

The complaints arose out of an investigation commenced by State Police Trooper Nancy Wiggin after she was notified by a Franklin pharmacy that the defendant had attempted to pass an altered prescription. Trooper Wiggin sought to determine whether other prescriptions had been filled for the defendant by inspecting prescription records kept by area pharmacies. *See* RSA 318-B:9, I (1995), :12 (1995 & Supp. 1996), :25 (Supp. 1996). Finding that a large number of prescriptions, written by different doctors, had been filled for the defendant at multiple pharmacies, Trooper Wiggin contacted each doctor and asked the following questions: whether the doctor knew the defendant, whether the doctor was aware that the defendant had been receiving treatment and prescriptions from other practitioners while being treated by and receiving prescriptions from the doctor being questioned, and why the doctor had prescribed a controlled drug for the defendant, *i.e.*, what medical problem the defendant had complained of in order to obtain the prescription. Trooper Wiggin also asked each doctor for any records relating to medications the doctor had prescribed for the defendant. Each doctor provided Trooper Wiggin with the requested information.

The defendant argues that Trooper Wiggin's warrantless procurement of her medical information violated her right "to be secure from all unreasonable searches and seizures of h[er] person, h[er] houses, h[er] papers, and all h[er] possessions." N.H. CONST. pt. I, art. 19. The defendant does not challenge Trooper Wiggin's inspection, pursuant to RSA 318-B:25, of pharmacy records or prescription profiles kept in compliance with RSA 318-B:12. Rather, the defendant objects to Trooper Wiggin having obtained, without a warrant, information beyond that compiled under RSA 318-B:12, such as the particular medical problems the defendant complained of in order to get the prescriptions for controlled drugs.

■ ■ The defendant first asserts that part I, article 19 protects not only her person and property, but also her "reasonable expectation of privacy in her medical records." *Cf. Katz v. United States*, 389 U.S. 347 (1967) (adopting the reasonable expectation of privacy analysis for purposes of determining whether an invaded interest is one that is protected under the fourth amendment of the Federal Constitution). This court has not adopted the reasonable expectation of privacy test as a basis for determining the scope of protection afforded by part I, article 19 of our State Constitution, *see State v. Pinkham*, 141 N.H. 188, 189-90, 679 A.2d 589, 590 (1996), and we decline to do so in this case. Since the defendant relies solely on the

State Constitution, we need not consider whether the search violated the Federal Constitution. *See Appeal of Atlantic Connections*, 135 N.H. 510, 514-15, 608 A.2d 861, 865 (1992).

■ Analyzing the case under our settled constitutional principles, we first inquire whether Trooper Wiggin's activities constituted a search within the meaning of part I, article 19. *See State v. McGann*, 124 N.H. 101, 104, 467 A.2d 571, 573 (1983). "[I]n considering what constitutes a search for purposes of our Constitution, we have stated that a search ordinarily implies a quest by an officer of the law, a prying into hidden places for that which is concealed." *State v. Pellicci*, 133 N.H. 523, 533, 580 A.2d 710, 716 (1990) (quotations omitted).

■ We have rejected the argument that any effort by the government to obtain evidence should be treated as a search within the meaning of the State Constitution because it is inconsistent with the reasoning of the agent-informer cases. *See State v. Valenzuela*, 130 N.H. 175, 186-88, 536 A.2d 1252, 1260-62 (1987), *cert. denied*, 488 U.S. 1008 (1988). Similar concerns dissuade us from characterizing Trooper Wiggin's actions as a search in constitutional terms. We see no difference, in a constitutional analysis, between Trooper Wiggin asking the doctors to voluntarily disclose information previously conveyed to them by the defendant and the police arranging for the doctors to act as voluntary agents or informers for the purpose of engaging the defendant in a conversation, the contents of which would then be disclosed to the police. *See State v. Kilgus*, 128 N.H. 577, 592, 519 A.2d 231, 241 (1986). We agree with the State that Trooper Wiggin's actions did not constitute a search for purposes of the State Constitution.

■ The defendant bases her constitutional argument on the existence of her statutory and evidentiary privilege against disclosure of confidential communications between a patient and her physician. *See* RSA 329:26 (Supp. 1996); N.H. R. EV. 503. The defendant argues that the doctors could not validly agree to reveal the information because she alone held the privilege, or, at best, that she and the doctors shared a possessory interest based on the doctors' physical possession of her medical records and her evidentiary privilege to prevent their disclosure. This argument is without merit. The physician-patient privilege does not apply to the information obtained here. The privilege is conferred entirely by statute; it did not exist at common law. *See State v. Elwell*, 132 N.H. 599, 603, 567 A.2d 1002, 1005 (1989). The legislature revoked the privilege in

precisely the circumstances alleged here by providing that "[i]nformation communicated to a practitioner in an effort unlawfully to procure a controlled drug, or unlawfully to procure the administration of any such drug, shall not be deemed a privileged communication." RSA 318-B:21 (1995).

■ The defendant further argues that even if the medical records are not privileged by reason of RSA 318-B:21, whether the communications were made to perpetrate a fraud must be decided in the first instance by a neutral and detached magistrate prior to the records' disclosure. We disagree. The defendant is essentially urging this court to impose a warrant-like requirement on the physician-patient privilege. We have already decided, however, that no warrant was required because there was no search in the constitutional sense. As we stated in *State v. Smart*, 136 N.H. 639, 664, 622 A.2d 1197, 1213, *cert. denied*, 510 U.S. 917 (1993), "[b]ecause no warrant was required, neither was the neutrality and detachment of a judicial officer."

■ The second point on which the defendant contends the trial court erred is in granting the State's motion to consolidate the two complaints of doctor shopping for a single trial. We will not reverse the trial court's ruling on a motion to consolidate unless the defendant is able to show an abuse of the trial court's discretion. *See State v. Bergmann*, 135 N.H. 97, 101, 599 A.2d 502, 505 (1991). "[T]he crucial question is whether the defendant's right to a fair trial was jeopardized by non-severance." *Id.* (quotation omitted).

■ The defendant contends that the consolidation prejudiced her right to a fair trial by precluding her from testifying as to either complaint where, absent consolidation, she would have testified as to one but remained silent as to the other. The defendant's claim must fail unless she can make a "convincing showing that [s]he had both important testimony to give concerning one count and a strong need to refrain from testifying on the other[]." *State v. Manna*, 130 N.H. 306, 310, 539 A.2d 284, 286-87 (1988) (quotation and brackets omitted). In her objection to the State's motion to consolidate, the defendant stated, "It also may come that the Defendant will wish to testify regarding one of these complaints, particularly the complaint regarding the November 20 through November 30 charges and would not wish to testify regarding the complaint alleging the January [*sic*] 1 through 17." This conclusory statement falls considerably short of a convincing showing.

> In making such a showing, it is essential that the defendant present enough information — regarding the nature of the testimony [s]he wishes to give on one count and h[er] reasons for not wishing to testify on the other — to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.

*Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968) (quotation omitted).

■ The defendant asserts for the first time on appeal that the testimony she would have given as to one complaint was that she had informed each doctor that she was being treated by the other doctors. Because the defendant could have raised this argument before the trial court but failed to do so, we will not consider it in reviewing the court's decision to consolidate the complaints. *See State v. Winn*, 141 N.H. 812, 814, 694 A.2d 537, 538 (1997). We hold that on the record before it, the trial court did not abuse its discretion in consolidating the two complaints.

■ The defendant argues in her brief that her right to a fair trial was prejudiced because the jury could not have considered the two complaints separately where "the activity for which the defendant has been charged is mixed between the two [complaints]." The defendant did not, however, raise this argument in her notice of appeal. We therefore consider the argument waived. *See State v. Peterson*, 135 N.H. 713, 714-15, 609 A.2d 749, 750-51 (1992).

■ The defendant's final argument is that the trial court erred in granting the State's motion to amend the complaints just prior to trial. Complaint No. S 95-124, which originally charged the defendant with doctor shopping between the dates of November 20 and 30, 1993, was amended to encompass the dates of November 5 through November 30, 1993. Complaint No. S 95-125, which originally covered the dates of November 1 to November 17, 1993, was amended to read October 29 through November 17, 1993.

The defendant argues that these amendments charged an additional instance of fraudulent activity in each of the complaints, and thus constituted an impermissible amendment as to a matter of substance. The defendant invokes the well-settled rule that indictments brought by a grand jury cannot be amended freely, and may be amended only as to form, not substance. *See State v. Erickson*,

129 N.H. 515, 519, 533 A.2d 23, 25 (1987). The defendant, however, was charged by complaint rather than indictment.

> The primary difference between indictments and complaints lies in the court's authority to permit amendments. While a court may permit amendment of a complaint, because it is a statement made by a person under oath, a court has no power to permit a prosecutor to amend an indictment, at least with respect to matters of substance, because the prosecutor has no authority to alter the action of the grand jury that returned the indictment.

1 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 555, at 440 (2d ed. 1991).

Nor can we say that the defendant was prejudiced by the timing of the amendment. The State's and the defendant's counsel were heard on the motion to amend the complaints on the morning of trial, prior to opening arguments. The defendant's counsel argued that the State's motion to amend on "the eve of trial" constituted unfair surprise and was prejudicial. The defendant's counsel did not, however, move for a continuance. "When a defendant does not request a continuance, h[er] claim of prejudice due solely to the timing of the amendment must fail." *State v. Crooker*, 139 N.H. 226, 228, 651 A.2d 470, 471 (1994).

*Affirmed.*

All concurred.