New London District Court
No. 2009-315

THE STATE OF NEW HAMPSHIRE

v.

JACOB DAVIS

Argued: April 22, 2010
Opinion Issued: December 17, 2010

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Michael J. Cornelio*, of New London, on the brief and orally, for the defendant.

BRODERICK, C.J., retired, specially assigned under RSA 490:3. The State appeals the decision of the New London District Court (*McSwiney*, J.) granting a motion of the defendant, Jacob Davis, to suppress blood test results obtained by the police from the New London Hospital. We reverse and remand.

The relevant facts are not in dispute. On September 26, 2008, Officer Valerie Peters of the Sutton Police Department responded to a report about an intoxicated student at the Kearsarge Regional High School. Shortly after she arrived, the defendant was taken by ambulance to New London Hospital. While at the school, Peters learned that the defendant had driven a teacher's automobile shortly before she was called to the high

school, and that while driving he had backed into a tree. She also learned that the student who was with him had been so concerned about his apparent intoxication that he had refused to allow the defendant to continue driving.

Peters proceeded to the New London Hospital Emergency Room, where she interviewed the defendant and asked him to submit to alcohol testing under the Implied Consent statute, RSA 265-A:4 (Supp. 2010). He refused. Meanwhile, as part of its treatment of the defendant, the hospital drew his blood and tested it to determine his blood alcohol concentration. After being released from the hospital, the defendant was charged with unlawful possession of alcohol and driving while intoxicated (DWI).

On October 2, 2008, Peters filed a Request for Hospital Blood Records on a Sutton police form indicating that she was investigating the defendant for operating a motor vehicle while under the influence of an intoxicating liquor or controlled drug. The form stated that Peters was, "pursuant to New Hampshire RSA 329:26 . . . requesting the release of any blood and urine samples and copies of any laboratory tests for blood alcohol content taken from this subject while in the care of the New London Hospital." The following day, Chief John Sims of the Sutton Police Department submitted a second request for the release of blood alcohol results on a New London Hospital form. The form indicated that Sims was investigating the defendant for the crime of operating a motor vehicle while under the influence of an intoxicating liquor or controlled drug, and that he was, "[p]ursuant to New Hampshire RSA 329:26 . . . requesting the release of any blood samples taken from [the defendant] on or about [September 26, 2008], and copies of the results of any laboratory tests that reveal the blood alcohol and/or controlled drug levels content of those blood samples." At no time did the State seek a search warrant for the results of the blood test.

Thereafter, the hospital released a laboratory report to the police showing that the defendant had a blood alcohol level of .295 percent. The police subsequently charged the defendant with aggravated DWI pursuant to RSA 265-A:3, III (Supp. 2010).

Prior to trial, the defendant filed a motion to suppress, in which he argued that seizure of his medical records without a warrant violated Part I, Article 19 of the New Hampshire Constitution and his right to privacy under the federal Health Insurance Portability and Accountability Act (HIPAA). The State objected, arguing that RSA 329:26 (Supp. 2010) gave the police the authority to obtain the test results, and that the defendant had no reasonable expectation of privacy in the results. After a hearing, the district court granted the motion to suppress. This appeal followed.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they are unsupported by the record or are

clearly erroneous. *State v. Robinson*, 158 N.H. 792, 795 (2009). We review the trial court's legal conclusions *de novo. Id.*

The State argues that the trial court erred when it ruled that the State's failure to obtain a search warrant for the defendant's blood test results violated the defendant's rights under Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment to the United States Constitution. We first address the defendant's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *id.* at 232-33.

Part I, Article 19 of our State Constitution provides: "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." Evidence that is obtained in violation of Part I, Article 19 may be subject to exclusion from evidence in a criminal trial. *State v. Canelo*, 139 N.H. 376, 386-87 (1995).

To determine whether a warrantless search may give rise to a violation of the State Constitution, we apply an expectation of privacy analysis. *State v. Goss*, 150 N.H. 46, 48-49 (2003). A warrantless search implicates Part I, Article 19 only if the defendant has exhibited an actual (subjective) expectation of privacy and that expectation is one that society is prepared to recognize as "reasonable." *Id.* at 49. Without an invasion of the defendant's reasonable expectation of privacy, there has been no violation of the defendant's rights under Part I, Article 19. *Robinson*, 158 N.H. at 796.

It is well settled that the government's withdrawal of blood from a person's body without a warrant or consent is a search and seizure under Part I, Article 19 of the New Hampshire Constitution. *State v. Steimel*, 155 N.H. 141, 147 (2007). Here, however, the blood was drawn by the hospital for medical purposes. As there was no state involvement in its withdrawal or testing, the drawing of the defendant's blood did not implicate Part I, Article 19. *See State v. Nemser*, 148 N.H. 453, 454 (2002) (protections against unreasonable searches and seizures apply only to state action).

The question remains, however, whether the State's request for, and acquisition of, the blood test results without a search warrant violated Part I, Article 19. *See State v. Summers*, 142 N.H. 429, 432 (1997). We will assume, as the defendant argues, that the proper inquiry is whether the defendant had a subjective expectation of privacy in the results of his blood test, and whether that expectation is one that society is prepared to recognize as reasonable. *Goss*, 150 N.H. at 48-49. We need not decide

whether the defendant had a subjective expectation of privacy in his blood alcohol test results because we conclude that it is not one which society considers reasonable.

Courts in other jurisdictions addressing whether a reasonable expectation of privacy exists in blood test results in the DWI context have reached different conclusions. Several courts have found that society does not recognize a reasonable expectation of privacy under the Fourth Amendment in "blood alcohol test results obtained and recorded by a hospital as part of its consensual treatment of a patient, where those results are requested by law enforcement for law enforcement purposes only in the investigation of an automobile accident." *Hannoy v. State*, 789 N.E.2d 977, 991 (Ind. Ct. App. 2003); *see also Tims v. State*, 711 So. 2d 1118, 1122-24 (Ala. Crim. App. 1997); *People v. Perlos*, 462 N.W.2d 310, 319-21 (Mich. 1990); *State v. Guido*, 698 A.2d 729, 733-34 (R.I. 1997); *State v. Hardy*, 963 S.W.2d 516, 523-27 (Tex. Crim. App. 1997); *State v. Jenkins*, 259 N.W.2d 109, 113 (Wis. 1977). Others have held that the government's acquisition of medical records under circumstances similar to those in this case violates the defendant's rights under state constitutional provisions prohibiting unreasonable searches and seizures, *see, e.g., Com. v. Shaw*, 770 A.2d 295, 299 (Pa. 2001), or state constitutional provisions that guarantee a right to privacy, *see, e.g., King v. State*, 535 S.E.2d 492, 494-97 (Ga. 2000); *State v. Nelson*, 941 P.2d 441, 446-50 (Mont. 1997).

■ While the decisions of courts in other jurisdictions are not binding upon us, we find persuasive the reasoning of those cases that focused upon the unique circumstances presented when the government requests and acquires the results of blood tests administered for the purpose of diagnosis and treatment of injuries sustained in an automobile accident. *See Tims*, 711 So. 2d at 1122-24; *Hannoy*, 789 N.E.2d at 990-92; *Perlos*, 462 N.W.2d at 315-21; *Hardy*, 963 S.W.2d at 523-27. We also agree that, "although not determinative, one source in analyzing the reasonableness of an expectation is to look to the Legislature," *Perlos*, 462 N.W.2d at 319, and that whether a privilege exists may be some evidence of societal expectations, *Hardy*, 963 S.W.2d at 524.

■ Here, the physician-patient privilege did not exist at common law. *State v. Elwell*, 132 N.H. 599, 603 (1989) (decided under prior law). It "was created in our State by statutory enactment in 1969, Laws 1969, ch. 386, and has been incorporated into the rules of evidence, N.H. R. Ev. 503." *Id.* Interpreting an early version of the statute, we held that a blood sample taken by hospital staff at the request of a physician in the course of treatment fell within the physician-patient privilege and could not be used as evidence in the defendant's trial for negligent homicide. *Id.* at 606. In

1996, however, the legislature amended the statute to exempt from the privilege the type of evidence at issue in *Elwell. See* Laws 1996, 267:2. The current version of the statute delineating the physician-patient privilege states, in relevant part:

> The confidential relations and communications between a physician or surgeon licensed under provisions of this chapter and the patient of such physician or surgeon are placed on the same basis as those provided by law between attorney and client, and, except as otherwise provided by law, no such physician or surgeon shall be required to disclose such privileged communications. . . . This section shall also not apply to the release of blood or urine samples and the results of laboratory tests for drugs or blood alcohol content taken from a person for purposes of diagnosis and treatment in connection with the incident giving rise to the investigation for driving a motor vehicle while such person was under the influence of intoxicating liquors or controlled drugs. The use and disclosure of such information shall be limited to the official criminal proceedings.

RSA 329:26. By its plain language, the statute now exempts from the physician-patient privilege blood alcohol test results of a person being investigated for driving under the influence of intoxicating liquor or controlled drugs where the blood alcohol tests were administered for the purpose of diagnosis and treatment. *See State v. Nickerson,* 147 N.H. 12, 13 (2001).

█ By carving out an exception to the physician-patient privilege under this narrow set of circumstances, the legislature has reflected the societal "belief that when people drive, they encounter a diminished expectation of privacy." *Perlos,* 462 N.W.2d at 320. The existence of the Implied Consent law further supports this conclusion. RSA 265-A:4 provides, in pertinent part:

> Any person who . . . drives or attempts to drive a vehicle upon the ways of this state . . . shall be deemed to have given consent to physical tests and examinations for the purpose of determining whether such person is under the influence of intoxicating liquor or controlled drugs, and to a chemical, infrared molecular absorption, or gas chromatograph test or tests of any or all of any combination of the following: blood, urine, or breath, for the purpose of determining the controlled drug content of such person's blood or alcohol concentration if arrested for any offense arising out of acts alleged to have been committed while the

person was . . . driving, attempting to drive, or in actual physical control of a vehicle . . . while under the influence of intoxicating liquor or controlled drugs or while having an alcohol concentration in excess of the statutory limits . . . .

Indeed, if a person refuses the request of a law enforcement officer to submit to physical tests or to a test of blood, urine or breath, the person's license to drive will be suspended. *See* RSA 265-A:14 (Supp. 2010).

■ ■ We reject the defendant's argument that RSA 332-I:1, I (Supp. 2010) supports the conclusion that he had a reasonable expectation of privacy in his medical records. The statute states, in relevant part, that "[a]ll medical information contained in the medical records in the possession of any health care provider shall be deemed to be the property of the patient." RSA 332-I:1, I. While the statute deems the information contained in medical records to be the property of the patient, it does not necessarily follow that this is property in which the defendant has a reasonable expectation of privacy. Indeed, such a reading would be at odds with RSA 329:26. Furthermore, the legislative history supplied by the State illustrates that RSA 332-I:1, I was enacted in response to concerns that some patients were having difficulty obtaining copies of their medical records, and was intended to facilitate patients' access to medical records. SENATE COMM. ON PUB. INSTITUTIONS, HEALTH AND HUMAN SERVICES, HR'G ON H.B. 511 (March 22, 1989). The legislative history does not contain any suggestion that the legislature intended to create a new right of privacy, independent of the physician-patient privilege. To the extent that the defendant may have a reasonable expectation of privacy in his medical records generally, *see In Re Search Warrant (Med. Records of C.T.)*, 160 N.H. 214, 226 (2010), we conclude that society does not recognize a reasonable expectation of privacy in blood alcohol test results obtained and recorded by a hospital as part of its consensual treatment of a patient, where those results are requested by law enforcement for law enforcement purposes in connection with an incident giving rise to an investigation for driving while under the influence of intoxicating liquors or controlled drugs. *See* RSA 329:26.

We also disagree with the defendant that the United States Supreme Court's decision in *Ferguson v. Charleston*, 532 U.S. 67 (2001), leads to a different result. At issue in *Ferguson* was a policy implemented by the police, a state hospital, and local officials to obtain evidence that could be used to prosecute pregnant women who tested positive for drugs. *Ferguson v. Charleston*, 532 U.S. at 69-71. Under the policy, the state hospital tested urine samples of maternity patients suspected of drug use. *Id.* at 70-73. The Supreme Court held that without the patient's informed consent, a state

hospital's performance of diagnostic tests to obtain evidence of a patient's criminal conduct for law enforcement purposes was an unreasonable search under the Fourth Amendment. *Id.* at 84-86.

In this context, the Supreme Court stated that "[t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." *Id.* at 78. However, the Supreme Court also noted that the existence of a statutory mandatory reporting requirement "might lead a patient to expect that members of the hospital staff might turn over evidence acquired in the course of treatment to which the patient had consented," *id.* at 78 n. 13, and declined to address a case in which doctors independently complied with reporting require-ments, *id.* at 85 n. 24. The Supreme Court also stated that "[w]hile state hospital employees, like other citizens, may have a duty to provide the police with evidence of criminal conduct that they inadvertently acquire in the course of routine treatment, when they undertake to obtain such evidence from their patients *for the specific purpose of incriminating those patients*, they have a special obligation to make sure that the patients are fully informed about their constitutional rights . . . ." *Id.* at 84-85. Thus, it is clear that the Supreme Court found a violation of the Fourth Amendment because the testing was done for, and in conjunction with, law enforcement. Because there was no law enforcement involvement in the taking or testing of the defendant's blood sample in this case, *Ferguson* does not apply.

■ Thus, we conclude that the State's request for, and acquisition of, the blood test results without a search warrant under the circumstances presented in this case does not implicate Part I, Article 19 of the New Hampshire Constitution. Furthermore, because the State Constitution is at least as protective of the right to be free from unreasonable searches as the Federal Constitution, *State v. MacElman*, 149 N.H. 795, 801 (2003), we reach the same conclusion under the Federal Constitution as we do under our State Constitution.

Finally, we note that the defendant concedes that the trial court erred when it found that the State was prohibited from obtaining the blood tests results under the provisions of HIPAA. Therefore, we express no opinion on this issue.

Accordingly, we conclude that the trial court erred when it granted the defendant's motion to suppress.

*Reversed and remanded.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.