NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2016-0293


THE STATE OF NEW HAMPSHIRE

v.

JAMES BAZINET

Argued:  October 19, 2017
Opinion Issued:  April 10, 2018


Gordon J. MacDonald, attorney general (Nicole E.A. Thorspecken, attorney, on the brief, and Sean R. Locke, assistant attorney general, orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.


HICKS, J.  The defendant, James Bazinet, was convicted by a jury of negligent homicide for driving a motor vehicle while he was intoxicated and causing a fatal collision.  See RSA 630:3, II (2016).  He appeals the rulings of the Superior Court (Colburn, J.) denying his motions to suppress the results of testing done by the State on a blood draw sample taken by the hospital after he arrived there unconscious.  We affirm.

The following facts are drawn from the trial court's orders denying the defendant's motions to suppress, or are otherwise undisputed. At approximately 11:00 p.m. on December 1, 2012, the defendant crashed his vehicle into a tree in Nashua. His female passenger died. Shortly after the crash, Officer Berry of the Nashua Police Department arrived at the scene. He examined the vehicle and noticed that neither the passenger nor the driver had been wearing a seatbelt at the time of the crash. He saw short grayish-brown hairs, consistent with the defendant's hair color, embedded in the glass of the front windshield. Berry also discovered a thermos-type cup in the passenger side of the center console containing liquid that smelled like alcohol.

The defendant was taken to the emergency room at Southern New Hampshire Medical Center (SNHMC). He arrived unconscious and with critical injuries. After his arrival, a phlebotomist drew five tubes of the defendant's blood, which were sent to the hospital's internal lab for testing (hereinafter, hospital blood draw sample). According to the phlebotomist, it is the hospital's routine medical practice to immediately obtain blood samples from trauma patients upon their arrival. The phlebotomist testified that the blood tests can reveal internal bleeding or show deficient electrolyte levels.

Early the next morning, Detective MacGregor of the Nashua Police Department delivered a letter to SNHMC requesting, pursuant to RSA 329:26, all hospital blood or urine samples taken from the defendant. See RSA 329:26 (2017). Later that day, Sergeant Mederos of the Nashua Police Department went to the hospital and collected four of the blood tubes. Thereafter, Officer Trefry of the Nashua Police Department sought a warrant to test the blood. A circuit court judge advised Trefry that he did not need a warrant because the police were already in lawful possession of the blood; thus, the judge did not sign the warrant. The State then ran a blood alcohol content and deoxyribonucleic acid (DNA) test on the blood.

Prior to trial, the defendant filed several motions to suppress. As relevant here, the defendant relied upon Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments to the United States Constitution to suppress: (1) the hospital blood draw sample; (2) the results of the blood alcohol content test performed on the hospital blood draw sample by the State; and (3) the results of the DNA test performed on the hospital blood draw sample by the State.

The trial court denied the defendant's motions. The court ruled that the defendant did not have a reasonable expectation of privacy in the hospital blood draw sample, and that the State acted lawfully in obtaining and testing it for blood alcohol content without a warrant. Citing a case discussing the emergency exception to consent in the civil context, the court found that the defendant implicitly consented to medical treatment. The court further

2

concluded that "no 'search' occurred within the meaning of our constitutions when the police later tested the defendant's blood for DNA."

At trial, the State presented testimony by a criminalist in the New Hampshire Division of State Police forensic science laboratory that the DNA obtained from the blood on the windshield matched the defendant's DNA from the blood draw sample. The State also offered testimony from two firefighters who, upon arriving at the scene of the crash, observed the defendant's feet pointed toward the driver's side of the vehicle. In addition, one of the firefighters testified to observing hair that "[s]eemed to be from the male" in an imprint on the driver's side of the windshield. The State further presented the results of the defendant's blood alcohol content test it performed on the hospital blood draw sample.

The jury convicted the defendant of negligent homicide. This appeal followed.

When reviewing a trial court's rulings on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. State v. Davis, 161 N.H. 292, 294-95 (2010). We review the court's legal conclusions de novo. Id. at 295.

On appeal, the defendant argues that the trial court's failure to suppress the results of the blood alcohol content and DNA tests performed by the State violated his rights under Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. With respect to both the DNA and the blood alcohol content tests the State ran on the hospital blood draw sample, the defendant argues that the trial court erred by relying upon the emergency exception to the requirement of consent to find that he implicitly consented to the hospital blood draw. As to the DNA results, the defendant argues that the trial court erred by finding that he did not maintain an expectation of privacy in his DNA contained within the hospital blood draw sample. We first address the defendant's claims under the State Constitution, and cite federal opinions for guidance only. See State v. Ball, 124 N.H. 226, 231-33 (1983).

We begin by addressing the defendant's argument regarding consent. We read the defendant's argument as being that, because it was error to find that he consented to the hospital blood draw sample, the hospital blood draw sample and the subsequent testing on the sample for blood alcohol content and DNA done by the State should have been suppressed.

Part I, Article 19 of our State Constitution provides: "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. Evidence obtained in violation of a defendant's rights under Part I, Article 19

3

may be subject to exclusion from evidence in a criminal trial. <u>Davis</u>, 161 N.H. at 295.

When determining "whether a warrantless search may give rise to a violation of the State Constitution, we apply an expectation of privacy analysis." <u>Id</u>. A warrantless search implicates Part I, Article 19 only if the defendant has exhibited an actual (subjective) expectation of privacy and that expectation is one that society is prepared to recognize as "reasonable." <u>Id</u>. Without an invasion of the defendant's reasonable expectation of privacy, there has been no violation of the defendant's rights under Part I, Article 19. <u>Id</u>.

"It is well settled that the government's withdrawal of blood from a person's body without a warrant or consent is a search and seizure under Part I, Article 19 of the New Hampshire Constitution." <u>Id</u>. When there is no state involvement in the withdrawal, the drawing of the defendant's blood does not implicate Part I, Article 19. <u>See</u> <u>id</u>.

Relying upon our decision in <u>Davis</u>, the defendant argues that "the question of patient consent [is] essential" to whether an invasion of privacy took place. In <u>Davis</u>, we addressed whether the State's request and acquisition of the blood alcohol content test <u>result</u> performed by the hospital violated the defendant's constitutional rights. <u>Id</u>. We held that it did not. <u>Id</u>. at 296, 299.

In <u>Davis</u>, the defendant was taken to a hospital by ambulance after driving his teacher's vehicle into a tree. <u>Id</u>. at 293. After obtaining information that the defendant was apparently intoxicated, a police officer went to the hospital and asked the defendant to submit to alcohol testing under the Implied Consent Statute, RSA 265-A:4 (Supp. 2010) (amended 2012, 2017). <u>Id</u>. at 294. The defendant refused. <u>Id</u>. However, as part of the defendant's treatment, the hospital drew his blood and tested it to determine his blood alcohol concentration. <u>Id</u>. After leaving the hospital, the defendant was charged with driving under the influence. <u>Id</u>. Without a warrant, the police sought and obtained, pursuant to RSA 329:26, the result of the blood alcohol content test run by the hospital. <u>Id</u>.

We determined that because the blood was drawn by the hospital for medical purposes, there was no state involvement in the drawing or testing of the defendant's blood. <u>Id</u>. at 295. The issue, then, was whether the defendant had a reasonable expectation of privacy in his blood alcohol content test result obtained by the hospital and given to the State pursuant to RSA 329:26. <u>Id</u>. We looked to other jurisdictions for guidance and found persuasive the reasoning of courts in those jurisdictions that do not recognize a reasonable expectation of privacy under the Fourth Amendment "in blood alcohol test results obtained and recorded by a hospital as part of its consensual treatment of a patient, where those results are requested by law enforcement for law

4

enforcement purposes only in the investigation of an automobile accident." Id. at 296 (quotation omitted).

We also looked to our legislature and considered the physician-patient privilege statute, RSA 329:26, and the Implied Consent law, RSA 265-A:4, as additional sources in analyzing the reasonableness of an expectation of privacy. Id. at 296. We determined that the legislature has reflected the societal "belief that when people drive, they encounter a diminished expectation of privacy." Id. at 297 (quotation omitted). Accordingly, to the extent that the defendant may have had a reasonable expectation of privacy in his medical records generally, we concluded:

> [S]ociety does not recognize a reasonable expectation of privacy in blood alcohol test results obtained and recorded by a hospital as part of its consensual treatment of a patient, where those results are requested by law enforcement for law enforcement purposes in connection with an incident giving rise to an investigation for driving while under the influence of intoxicating liquors or controlled drugs.

Id. at 298

Though we referred to the "consensual treatment of a patient" in Davis, the defendant's consent to medical treatment was not at issue in that case. Id. (emphasis added). We now hold that what is important regarding the circumstances of the actual blood draw, for purposes of determining whether the defendant has a reasonable expectation of privacy in the State's acquisition and testing thereof, is whether: (1) the withdrawal was done "for purposes of diagnosis and treatment in connection with the incident giving rise to the investigation for driving a motor vehicle while such person was under the influence of intoxicating liquors or controlled drugs," RSA 329:26; and (2) whether the withdrawal involved state action, see Davis, 161 N.H. at 295.

Here, although the defendant was unconscious when he arrived at the hospital, there is no dispute that the hospital blood draw was done for the purpose of diagnosis and treatment by hospital personnel. We need not consider whether the defendant consented to the hospital blood draw because there was no state action in the withdrawal of the defendant's blood; it was drawn for purposes of diagnosis and treatment and, therefore, the hospital blood draw itself did not implicate Part I, Article 19 of the New Hampshire Constitution. See id. (concluding that the drawing of the defendant's blood by the hospital did not implicate Part I, Article 19). Whether or not the blood alcohol test was performed by the hospital or the State on the already drawn blood sample is not material to the analysis. Thus, the trial court did not err by denying the defendant's request to suppress the results of the blood alcohol content test run by the State on the hospital blood draw sample.

5

Next, the defendant argues that the trial court erred by failing to suppress the results of the DNA test performed by the State on the hospital blood draw sample because he maintained a reasonable expectation of privacy in the DNA contained in the sample and, therefore, the State needed a warrant to test it for DNA. The State contends that admission of the results of the DNA test was not error, but even if it was error, any error in admitting the results was harmless. We need not determine whether the trial court erred in admitting the results of the DNA test run by the State on the hospital blood draw sample because, we agree with the State that any error was harmless. See State v. Edic, 169 N.H. 580, 588 (2017).

> The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

Id. (quotation omitted). "To establish that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict." Id. (quotation omitted). "This standard applies to both the erroneous admission and exclusion of evidence." Id. (quotation omitted). An error may be harmless beyond a reasonable doubt if the other evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. Id. at 588-89. In making this determination, we consider the other evidence presented at trial as well as the character of the erroneously admitted evidence itself. Id. at 589.

The defendant was convicted of negligent homicide — driving under the influence of intoxicating liquor. See RSA 630:3, II. To convict the defendant, the State had to prove beyond a reasonable doubt that: (1) the defendant was under the influence of intoxicating liquor; (2) when he operated a propelled vehicle; and (3) caused the death of another. Id.

Here, the State presented evidence that the DNA in the defendant's hospital blood draw sample matched the DNA in the blood found on the driver's side windshield. Nonetheless, the other evidence presented to establish that the defendant was the driver of the vehicle was overwhelming. Lieutenant Desjadon of the Nashua Fire Rescue testified that shortly after he arrived at the scene of the crash, he saw a male occupant whose "torso was on the passenger side, and . . . his feet were pointing toward the driver's side of the vehicle." Another firefighter, Rioux, testified that he noticed a male "laying in the passenger seat with his seat angled into the driver's side well and he was faced towards the . . . driver's side post." He further testified that the male was "looking up" and that "[h]is feet were located in the driver's side well." He

stated that "[he] was just angled because he was sitting in the passenger seat, but his feet were still in the driver's well."

Rioux also testified that he noticed a woman "was jammed in the corner of the passenger side." He "couldn't see her initially, but then when [he] pulled [the male occupant] off, . . . [he] noticed her." He stated that "her feet were positioned in the passenger side well." Furthermore, Rioux observed that "on the driver's side of the windshield, there was . . . starring," which he explained is "typically from a head that will make an imprint on the windshield." He also noticed hair that "[s]eemed to be from the male."

Officer Trefry testified that when shown a photograph of the windshield "just offset from the driver's side," he could see "grayish-brown hairs all on this area." Trefry also testified that at some point after the accident he spoke to someone who identified himself as James Bazinet who was "requesting his cellphone and his wallet." Trefry stated that this person told him that he

> had a limited recollection of what happened that night. But something to the effect he was leaving a gathering or a party, and he was driving, and that he was driving up the road, and he had to swerve to avoid a head-on collision with a large truck, which caused him to go off the road and hit the tree.

As we have said before, DNA evidence possesses a unique character for proving identity. State v. Vandebogart, 139 N.H. 145, 158 (1994) (concluding that the erroneous admission of DNA evidence was harmless because of the overwhelming nature, quantity, and weight of other evidence). However, given the other evidence presented by the State to establish that the defendant was the driver, the DNA evidence was cumulative. For these reasons, we conclude that the State has met its burden of proving that any error in admitting the DNA evidence was harmless beyond a reasonable doubt.

Finally, any issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived. See State v. Mwangi, 161 N.H. 699, 707 (2011).

Affirmed.

LYNN, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred; DALIANIS, C.J., retired, specially assigned under RSA 490:3, concurred.