**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0320, <u>State of New Hampshire v. Kathryn D. Pate</u>, the court on October 13, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, Kathryn D. Pate, was charged with aggravated driving while intoxicated in violation of RSA 265-A:3, III (2014). The State appeals an order of the Circuit Court (<u>LeFrancois</u>, J.) granting the defendant's motion to suppress her blood test results after finding that the State failed to establish probable cause for the arrest of the defendant, and that the release of the blood and blood test results was not authorized by RSA 329:26 (2017). Because we agree with the trial court that the statutory exception to the confidentiality of the defendant's blood tests results does not apply, we do not address whether the State failed to establish probable cause for the arrest or reach the question of whether the blood draw implicated Part I, Article 19 of the New Hampshire Constitution. We affirm and remand.

The following facts are taken from the trial court order or could have been found by the trial court on the evidence before it. On April 21, 2019, Officer Rodolakis was dispatched to a parking lot after an unidentified 911 caller reported a "nonresponsive" person in a black SUV. He arrived around the same time as fire and emergency rescue personnel. Upon arriving at the parking lot, the officer observed that the vehicle was running, and that the wiper blades were on even though it was not raining. Rodolakis approached the driver's side door of the SUV, and saw the driver slumped over the center console with her head and an arm on the passenger seat. The vehicle was in reverse. He opened the door to the vehicle, determined that the driver was a female in her forties, later identified as the defendant, and that she was breathing. Rodolakis instructed the fire personnel to shut the vehicle off and remove the key. After he shook her awake, the defendant started mumbling in a slow, low tone, and Rodolakis observed her to have glassy and bloodshot eyes. He did not see any contraband or evidence of drug use in the car, but observed an aftermarket portable breath test in the backseat. Rodolakis arrested the defendant and had her transported to the hospital where her blood was drawn by hospital personnel. The defendant was thereafter charged, <u>inter alia</u>, with aggravated driving while intoxicated. <u>See</u> RSA 265-A:3, III.

The defendant filed a motion to suppress any evidence "obtained as a result of the illegal entry and search of her vehicle" and of her "arrest without a warrant or probable cause," and the "illegal forced blood draw." Following a November 7, 2019 hearing at which Rodolakis was the only witness, the trial court granted the motion to suppress. The trial court determined that "there was not a basis for the search and seizure of the defendant's motor vehicle triggered by the opening of the driver's door by the officer," and that "[t]he evidence obtained by the State after that unlawful intrusion is therefore suppressed." The State filed a motion to reconsider, to which the defendant objected. The trial court denied the State's motion, and the State appealed. We reversed, concluding that the officer's act of opening the defendant's door fell under the community caretaking exception to the warrant requirement. See State v. Kathryn D. Pate, No. 2020-0033 (non-precedential order at 4), 2020 WL 739113 (N.H. Dec. 16, 2020).

On remand, the defendant renewed her motion to suppress. A hearing was held on March 15, 2022, at which the court heard arguments from both sides, but took no testimony. Thereafter, the court issued an order granting the defendant's motion to suppress. The trial court found that the State had failed to establish probable cause for the arrest of the defendant. In addition, the trial court found that even if there had been probable cause for arrest, the State had failed to establish that the blood draw was taken by the hospital staff for the purposes of diagnosis and treatment.

When reviewing a trial court's rulings on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. State v. Bazinet, 170 N.H. 680, 683 (2018). We review the trial court's legal conclusions de novo. Id.

In its order granting the motion to suppress, the trial court stated, in relevant part:

> Under RSA 329:26 and under [State v. Davis, 161 N.H. 292 (2010)], in order for the exception to confidentiality of defendant's blood draw and results to apply, the State needs to submit evidence that the blood draw was part of the consensual treatment of the defendant. The State simply did not submit any evidence to establish the exception in this case.

In its order denying the State's motion to reconsider, the Trial Court (LeFrancois, R. approved by Weaver, J.) clarified:

> [I]n this case there was no evidence proffered by the State of any hospital staff providing any information about the blood draw. The defendant in this case was conscious, refusing medical treatment, and was not free to go because she was already under arrest when she arrived at the

hospital. There is a dispute in this case as to the purpose of the blood draw. The court does not assume it was done for the purpose of diagnosis and treatment when there is no evidence proffered by the State, the defendant is refusing medical treatment, and the defendant is in custody and cannot leave the hospital.

The State argues that the trial court erroneously shifted the defendant's burden of proof to the State when it concluded that RSA 329:26 required the State to prove that the blood was drawn for the purposes of diagnosis and treatment.

Assuming, without deciding, that the initial burden was on the defendant, we read the trial court's orders as finding that the defendant had presented evidence sufficient to support the conclusion that the blood was not drawn for the consensual medical diagnosis and treatment, after which the burden shifted to the State to prove that the blood was drawn for medical diagnosis and treatment. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (interpretation of trial court order is a matter of law). We conclude that the evidence supports the trial court's findings, and that the trial court did not misapply the law when it found that the burden had shifted to the State.

The only testimony offered at the hearing on the motion to suppress was that of Rodolakis. He testified that after he arrested the defendant the rescue personnel were still there, and that he heard the defendant tell them, "leave me alone." According to the officer, the rescue personnel asked him "to search her while she was on the stretcher," at which point he told them that he "wanted to handcuff her," so he handcuffed each of her arms to the stretcher. Thereafter, according to Rodolakis, the East Kingston Fire Department transported the defendant to the hospital because they "wanted to transport her as far as their community caretaking obligation," and he followed behind. Rodolakis also testified that when the defendant arrived at the hospital, she was treated by the emergency room team and that he was in the room "[a]t times" when this happened. According to Rodolakis, the defendant was "belligerent" and "aggressive" toward hospital staff. On cross-examination, the officer agreed that the defendant had declined all treatment and care at the hospital, and that the declination was "clear and unambiguous." Nevertheless, at some point, hospital personnel drew the defendant's blood. While Rodolakis testified that at no time did he indicate to hospital staff that he wanted the defendant's blood drawn, "[he] saw them draw blood for their medical assessment," and told staff that [he] was going to seize the blood." He then asked hospital staff to "set it aside" for him, and said that he was going to return with a warrant.

RSA 329:26 ("Confidential Communications") provides that confidential relations and communications between a physician and a patient are

3

privileged, except as otherwise provided by law, and are not to be disclosed. The statute also states:

> This section shall also not apply to the release of blood or urine samples and the results of laboratory tests for drugs or blood alcohol content taken from a person for purposes of diagnosis and treatment in connection with the incident giving rise to the investigation for driving a motor vehicle while such person was under the influence of intoxicating liquors or controlled drugs. The use and disclosure of such information shall be limited to the official criminal proceedings.

RSA 329:26 (emphasis added). We held in two cases that the defendants' constitutional rights were not violated when the State obtained blood alcohol test results without a warrant. State v. Davis, 161 N.H. 292, 294, 299 (2010); Bazinet, 170 N.H. at 682-83, 686. In neither case was the question of whether the blood was drawn for purposes of medical diagnosis and treatment in dispute. Bazinet, 170 N.H. at 682 (defendant was transported to a hospital following a motor vehicle accident and arrived at the hospital unconscious and with critical injuries; phlebotomist testified that it was hospital's routine medical practice to immediately obtain blood samples from trauma patients upon their arrival); Davis, 161 N.H. at 294 (undisputed that the hospital had withdrawn the defendant's blood "as part of its treatment of the defendant"). Accordingly, we did not consider who bears the initial burden of proving that the exception to the statutory privilege applies. Nor do we need to decide that issue today. Through its cross-examination of Rodolakis, the defense presented evidence that the defendant did not consent to a blood draw for diagnosis and treatment, and the State presented insufficient evidence to rebut this. Accordingly, the exception to confidentiality set forth in RSA 329:26 does not apply.

Having concluded that the evidence supports the trial court's finding that the medical exception set forth in RSA 329:26 does not apply, we need not reach the question of whether the defendant's constitutional rights were violated, and therefore need not address the State's argument that the defendant bears the burden of proving that state action in some way motivated or caused the blood draw.

Affirmed and remanded.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

4